Estate of Ben R. Henderson, Deceased, Union Planters National Bank & Trust Company, Executor, v. Commissioner.
Estate of Ben R. Henderson v. Commissioner
Docket No. 30633.
United States Tax Court
1952 Tax Ct. Memo LEXIS 65; 11 T.C.M. (CCH) 1014; T.C.M. (RIA) 52301; October 21, 1952
*65 Held, that the assets of a corporation of which decedent was the sole stockholder and which were distributed to him in 1945 in complete liquidation of the corporation had a value as follows: value of tangible assets, $43,087.94, value of intangible assets, including good will, $15,000. Held, further, these values should be used in computing petitioner's gain or loss which resulted from the liquidation of decedent's 190 shares of stock in 1945. John W. Loch, Esq., 1325 Commerce Title Bldg., Memphis, Tenn., and Charles H. Davis, Esq., for the petitioner. S. Earl Heilman, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined a deficiency in income tax of decedent for the year 1945 in the amount of $11,595.30. The deficiency is due to one adjustment made by the Commissioner "(a) Capital gain - $23,022.32." This adjustment is explained in the deficiency notice as follows: "(a) There was reported in the decedent's return for 1945 a short-term capital loss in the amount of $14,688.07 claimed to have been attributable to the surrender of 89 shares of capital stock of Henderson & Schley, Inc., in connection with *66 the liquidation of that corporation on or about March 31, 1945. It is held that the decedent sustained no allowable loss in connection therewith. "There was also reported in the return for 1945 a long-term capital gain to be taken into account in the amount of $5,871.92 attributable to the surrender of 101 shares of capital stock of Henderson & Schley, Inc. It is held that the decedent realized a long-term capital gain to be taken into account in the amount of $14,206.17 (50 per cent of $28,412.33) in connection therewith. "Accordingly, the income reported on the return filed by the taxpayer has been increased by the amount of $23,022.32, the sum of the loss disallowed in the amount of $14,688.07 and $8,334.25, the excess of the amount determined as the longterm capital gain realized in connection with the 101 shares of capital stock over the amount of long-term capital gain reported in connection with the same shares. By appropriate assignments of error petitioner contests the foregoing determination of the respondent. Findings of Fact Some of the facts have been stipulated and are adopted as part of our Findings of Fact and are incorporated herein by this reference. *67 Petitioner is the estate of Ben R. Henderson, deceased. Said decedent duly filed his individual income tax return for the calendar year 1945 with the Collector of Internal Revenue for the District of Tennessee at Nashville, Tennessee. The decedent died February 13, 1950. Henderson & Schley, Inc., sometimes hereafter referred to as H & S was incorporated in 1919 with an authorized capital stock of 200 shares of the par value of $100 each. Ben R. Henderson was issued 101 shares and 89 shares were issued to C. W. Schley in 1919, and at the date of the liquidation of the corporation in March 1945 only 190 shares were outstanding. At the date of his death in the early part of March 1945, C. W. Schley owned the 89 shares of stock which he had acquired in 1919. On or about March 29, 1945, Henderson who owned the 101 shares of stock which he had acquired in 1919, purchased from Mrs. C. W. Schley, executrix of the estate of C. W. Schley, the 89 shares of stock owned by Schley in his lifetime for $33,936.61, or $381.31 per share. On March 29, 1945, Henderson, then the sole stockholder of H & S took appropriate steps to dissolve the corporation and have transferred to him, in consideration *68 of the surrender for cancellation of all certificates of stock, all of the assets of the corporation, effective as of March 31, 1945. He agreed to take the assets subject to outstanding liabilities and to discharge the liabilities out of the assets conveyed to him. An appropriate declaration and resolution to effect dissolution and surrender of the charter was filed in the office of the Secretary of State of Tennessee on March 31, 1945. The net worth of H & S on March 31, 1945, which included its capital stock, surplus, paid-in profits, and undivided profits as shown by its books of account, was $41,090.24. The fair market value of the assets of H & S on said date without giving effect to the value of the good will, if any, which the corporation possessed was the value as shown upon the books of account and the balance sheet, except that (a) the market value of the United States obligations plus accrued interest exceeded the book value thereof by $497.70, and (b) the corporation had office furniture and fixtures not shown on the books of account as having any value which were appraised at the value of $1,500 and sold for that amount immediately after the dissolution of the corporation. *69 By virtue of the foregoing the net worth of the corporation, to-wit, its capital, surplus, and undivided profits exclusive of the value of the good will, if any, of said corporation was $43,087.94, or $1,997.70 in excess of the amount as shown by the books of account. The business of the corporation was procured and produced by: (a) salesmen or solicitors including (1) the decedent Ben R. Henderson (he had some very valuable clients whose business he largely controlled), (2) C. W. Schley during his lifetime, and (3) two solicitors regularly employed by the corporation, namely, Mathews and Loskove; (b) numerous subagents or local agents located in the town and cities of western Tennessee and eastern Arkansas within a radius of about 150 miles from the City of Memphis; and (c) other insurance agents in the City of Memphis who for special reasons brokered some of their business with H & S. From the time of its organization until its dissolution the corporation was engaged in the business of negotiating as agent contracts for all usual and common types of insurance except insurance upon the lives of persons. It served as general agent for Maryland Casualty Company, a corporation engaged *70 in the business of writing casualty insurance and acting as surety for compensation on all common types of bonds, as local agent for other companies, and as insurance broker. As general agent for Maryland Casualty Company the corporation's territory comprised that part of eastern Arkansas and western Tennessee which was within a radius of approximately 150 miles of Memphis. It had about 70 local agents which it supervised and received an overwriting commission on all insurance originating within the territory assigned to it. The corporation represented Commonwealth Insurance Company, Hanover Fire Insurance Company, and Home Insurance Company as a local agent, and acted as broker for other insurance agencies. Henderson, Schley, and the two solicitors employed by the corporation also sold casualty and surety policies, as well as all other types of insurance other than that on the lives of persons. The policies which were negotiated by the corporation, its solicitors, or the local agents working under it on behalf of Maryland Casualty Company were written for terms of one year, three years, or five years. There was no obligation on the part of the policyholders to renew their policies, *71 and the policies could be cancelled. There were few cancellations, however, and, during the last five years of the corporation's existence, only about five to ten per centum of the policyholders failed to renew their policies because of death, removal, or similar reasons. Few of the local agents working under H & S on the Maryland Casualty Company general agency contract terminated their arrangements with H & S. Although the contracts between the corporation and the various insurance companies it represented as local agent or general agent were terminable at the will of either party upon giving a specified amount of notice, all of the contracts in existence at the date of the dissolution of the corporation, including that with Maryland Casualty Company, had been in existence since 1919. Henderson & Schley, Inc., had a good reputation in the City of Memphis, they gave good service, represented strong, first-class insurance companies, and had a good clientele of customers. The commissions income, total income, compensation of officers, other deductions, and net income reported by the corporation for the fiscal year ended March 31, 1945, were as follows: Commissions income
$45,820.19
Total income
46,223.79
Compensation of officers
23,509.92
Total deductions
32,990.52
Net income
13,233.27
*72 Schley had a heart attack in the summer of 1940 and was not active in the business from that date until his death in 1945. The 101 shares of stock which decedent had acquired in 1919 had a cost basis of $10,100 when they were surrendered to the corporation on or about March 31, 1945. The 89 shares of stock which decedent acquired from the estate of C. W. Schley in 1945 had a cost basis to him of $33,936.61, the price which he paid to the estate for the 89 shares. Ultimate Facts The fair market value of the tangible assets of the Henderson & Schley corporation which were distributed to Ben R. Henderson in 1945 upon the liquidation of the corporation was $43,087.94. The fair market value of the intangible assets of the Henderson & Schley corporation, including good will and going concern value, which were distributed to Ben R. Henderson in 1945 upon the liquidation of the corporation was $15,000. Opinion BLACK, Judge: We really have only one issue to decide in this proceeding and it is largely one of fact and that is whether the corporation, Henderson & Schley, possessed intangible assets, including good will, in addition to its physical assets when it was liquidated in *73 1945 and all of its assets were distributed to its then sole stockholder, Ben R. Henderson. The parties have stipulated as to the value of the tangible assets which were distributed in liquidation and we have no problem there. The parties, however, are in entire disagreement as to the value, if any, of the corporation's good will or going concern value which went over to Ben R. Henderson at the time the corporation was liquidated in 1945. It is respondent's contention that the value of the assets of the corporation, tangible and intangible, at the time they were distributed to decedent in liquidation was the figure he has determined in his computation of the deficiency, whereas it is petitioner's contention that the entire value of the assets which were distributed to Ben R. Henderson was the value of the physical assets which it is now stipulated is $43,087.94, or $226.7784 per share and that nothing should be added to these figures on account of good will. It, of course, requires no citation of authorities to establish the proposition that respondent's determination is presumed to be correct. However, much evidence, stipulated and oral, was received at the hearing and the issue *74 which we have to decide is, therefore, to be decided on its merits rather than to give effect to any presumption that the Commissioner's determination is correct. After a careful consideration of all the evidence, stipulated and otherwise, we have made a finding that "The fair market value of the intangible assets of the Henderson & Schley corporation, including good will and going concern value, which were distributed to Ben R. Henderson in 1945 upon the liquidation of the corporation was $15,000."This finding of fact really disposes of the only issue in the case. There is no dispute as to the fair market value of the tangible assets which were distributed to Ben R. Henderson and there is no dispute as to the cost basis of his 190 shares of stock which were surrendered and cancelled in the liquidation. Respondent strongly argues that inasmuch as Henderson paid Mrs. Schley $381.31 per share for her 89 shares of stock a short time prior to the liquidation of the corporation that this value of $381.31 per share should be placed upon each and every share, including his own 101 shares, and that when this is done the shares had a total liquidating value of $72,448.90. By subtracting the *75 value of the physical assets of $43,087.94 from the figure of $72,448.90, respondent argues in his brief that the value of the intangibles, including good will of the corporation, was $29,360.96. Petitioner strongly argues that this contention of respondent is not well founded and the corporation had no good will which it could or did transmit to Ben R. Henderson and that the fact that he paid Mrs. Schley considerably more than the book value of her stock does not establish that the corporation had any good will value. On this point petitioner says in its brief, among other things, as follows: "The more logical inference is that Henderson considered that he would find it very much to his advantage to carry on the insurance business as a sole proprietor, instead of in corporate form or partnership with Mrs. Schley as a part owner, entitled to share in the profits, in the production of which she could not participate. Henderson may also have had in mind the possible advantage tax wise to accrue from dissolving the corporation and engaging in business as a sole proprietor, with prospects of increasing corporation and individual income tax rates. Henderson as a major stockholder could *76 not entirely dominate the corporation as respondent has suggested, because his ownership of 101 shares (being less than two-thirds) of the 190 shares outstanding was not sufficient to enable him under the Tennessee law to compel a dissolution and liquidation of the corporation. The Tennessee law required the consent of the owners of not less than two-thirds of the issued and outstanding capital stock entitled to vote, in order to compel dissolution or liquidation (Williams Tennessee Code Annotated, Section 3756)." Ben R. Henderson died prior to the trial of this proceeding and was, therefore, unable to testify at the hearing in explanation of why he paid Mrs. Schley $381.31 per share for her stock which was considerably in excess of its book value. But we are unwilling to draw the inference that the entire difference which Henderson paid Mrs. Schley between the book value of her stock and the price he paid her was due to the reasons which petitioner argues in its brief. We think it is reasonable to believe that he knew he was acquiring the entire ownership of a going insurance business which for a good many years had been profitable and which he expected would continue to be profitable *77 and, therefore, that he did give some consideration to the good will value of the business and that part of what he paid was on that account. On the other hand, in view of the several witnesses which petitioner introduced at the hearing and who testified on the issue of good will, we are unable to agree with respondent's contention that the good will of Henderson & Schley, Inc., was as great as it contends in his brief. It will be noted in the Commissioner's determination of the deficiency he does not specifically mention "good will" or intangible assets value. As we have already stated, after a careful consideration of all the evidence in the record including the oral testimony of witnesses and also the fact that just a short time prior to the liquidation of the corporation decedent paid Mrs. Schley $381.31 per share for her stock, we have made a finding of fact that the good will or going concern value of Henderson & Schley at the time of the liquidation in 1945 and which was transferred to Henderson was $15,000. As we have already stated, this disposes of the only issue that we have to decide. Having decided this issue as we have it becomes unnecessary to decide respondent's alternative *78 contention that the transaction by which Ben R. Henderson acquired 89 shares of Henderson & Schley corporation from Mrs. Schley for $381.31 per share was not one entered into for profit. We understand from a reading of respondent's brief that this contention is raised only in the alternative in case we should sustain petitioner's contention that no good will value was transferred to Henderson in the liquidation of the corporation. Decision will be entered underrule 50.